FIDELITY UNION TRUST COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, AS TRUSTEE, ETC., PLAINTIFF, v. LOUIS PAVLOVSKY, IDA JACOBS AND DOROTHY PAVLOVSKY, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF PETER PAVLOVSKY, DECEASED, ET AL., DEFENDANTS.

Decided December 30, 1938.

For the plaintiff, *Hood, Lafferty & Campbell.*

For the defendants, *Morris Margaretten.*

SMITH, JOSEPH L., C. C. J. This comes on a motion to strike several defenses raised in a suit for deficiency arising out of the foreclosure of a mortgage. The suit is against many defendants, including the executors and devisees of the original mortgagor, Peter Pavlovsky, and is composed of five counts. The answer is filed in behalf of the executors and devisees under the will of the said Peter Pavlovsky, and relates to the first and second counts of the complaint only.

The defenses which the plaintiff moves to strike are the second, third, fourth, fifth and seventh defenses to the first count, and the second, third, fourth and fifth defenses to the second count.

The first count is against the executors of Peter Pavlovsky; the second count is against the devisees and legatees under the will of Peter Pavlovsky.

The various defenses and the motion directed to them will be taken in their logical order.

A. The second defense to the first and second counts sets forth that the plaintiff had failed to join as a party defendant in its foreclosure suit, one Miller Marine Company, a monthly tenant.

The plaintiff maintains that this defense is insufficient in law in that the said Miller Marine Company is estopped from denying that it was properly joined as a party defendant. Plaintiff endeavors to sustain this contention, not by facts appearing on the face of the defendants' pleadings; nor by refuting or denying the facts averred in the defense, but by the affirmative allegation of additional facts. In fact, plaintiff admits that Miller Marine Company, a corporation, occupying the premises as a monthly tenant, was not, as such, made a party defendant in the foreclosure suit, and argues that by reason of certain alleged circumstances, the Miller Marine Company is barred from claiming any interest in the premises, and that, therefore, there was a complete sale of the premises by the sheriff. Such additional facts raise a new issue, and should be pleaded affirmatively by way of reply.

For the purposes of the present motion, the validity of the defense must be determined by what appears on the face of the answer. *Milberg* v. *Keuth,* 98 *N. J. L.* 779; 121 *Atl. Rep.* 713. The defense as pleaded, comes directly within the rule stated in *American-Italian Building and Loan Association of Elizabeth* v. *Liotla,* 117 *N. J. L.* 467; 189 *Atl. Rep.* 118, namely, that failure to join a monthly tenant as party defendant in the foreclosure suit constitutes a valid defense to the deficiency suit on the bond. It appears, therefore, that the defense as pleaded, is not insufficient in law.

Plaintiff's contention that the defense is sham is likewise untenable, for it is not denied that the Miller Marine Company, a corporation, was a monthly tenant of the foreclosed premises and that it was not made a party defendant in the foreclosure suit.

As stated in *Jaeger* v. *Naef,* 112 *N. J. L.* 417; 171 *Atl. Rep.* 166, a motion to strike a pleading as frivolous, sham or false, will not be granted unless it appears to be clearly and

palpably so, and the power should be cautiously exercised. The duty of the court is to determine whether an issue of fact is presented, and not to try the issue.

Plaintiff contends that the Miller Marine Company is estopped from asserting any claim as tenant. As stated above, this is a matter for affirmative pleading. The alleged estoppel, however, is not set forth against the present answering defendant. It is not even suggested that these defendants, or their ancestor who executed the bond, are to be estopped from denying that the Miller Marine Company was properly joined as party defendant in the foreclosure suit. In the case of *Fidelity Union Trust Co.* v. *Chausmer,* 120 *N. J. L.* 208; 198 *Atl. Rep.* 828, relied upon by the plaintiff, it was the acts and conduct of the defendant herself that was held to estop her from asserting that a monthly tenant had not been joined as party defendant in the foreclosure action. That is not the situation here.

Plaintiff further contends that by force of section 58 of the Chancery act (*R. S.* 2:29-27), the Miller Marine Company is bound by the foreclosure proceedings. The act in question applies to persons claiming an interest in the foreclosed premises through any instrument which could be recorded, and has not been recorded. Plaintiff's position is that, because the Miller Marine Company had not filed its certificate of incorporation with the secretary of state, it comes under the section cited. In answer to this contention, it is sufficient to note that the Miller Marine Company did not claim any interest in the foreclosed premises through its certificate of incorporation; and further, its certificate of incorporation was *recorded* with the county clerk, although not filed with the secretary of state.

It follows, therefore, that the second separate defense to the first and second counts sets forth a valid defense.

B. The gist of the third defense to the first and second counts, is that a sale of the foreclosed premises, subject to taxes, which were due but not yet a lien, constituted a failure to exhaust the security, *i. e.,* a failure to make a complete sale. The plaintiff maintains this defense is sham and insufficient in law.

According to defendants' affidavits, the sale was made "subject to the following liens and encumbrances: (a) unpaid taxes, water rents, assessments and other municipal liens of every kind and nature, if any." It is difficult to conceive how this provision prevented the complete exhaustion of the mortgagee's entire security; how it lessened the salability or the value of the property sold. Whether the taxes were, as yet, a lien or not, a purchaser would have to buy the property subject to such taxes. As for defendants' statement, made in their answering brief, that the amount of such taxes and liens was not announced at the sale; no such failure is set forth in the defense.

It appears then, that the third separate defense is insufficient in law and will be striken.

C. The fourth separate defense to the first count is a bare denial of indebtedness by the executors; the first count of the complaint being against the named defendants as executors of Peter Pavlovsky.

It is held in *Hess* v. *Bugbee,* 13 *N. J. Mis. R.* 358; 178 *Atl. Rep.* 626, that failure to present claims to the executors of the estate of the mortgagor, prevents a recovery on the bond in a suit against the executors.

The fourth defense as pleaded, may be vague and subject to attack on that ground; but it cannot be said that it is sham; or that it is insufficient in law. The motion to strike the fourth defense to the first count, will, therefore, be denied.

D. The fourth separate defense to the second count is likewise a bare denial, by the devisees, that their ancestor, Peter Pavlovsky, was indebted to the plaintiff. If, as contended by the defendants under the second defense, a proper and complete sale of the foreclosed premises was not had, by reason of the failure to join the Miller Marine Company as party defendant in the foreclosure suit, then it follows that Peter Pavlovsky was not liable for deficiency on the bond, and therefore the devisees are not liable.

This separate defense, then, is a conclusion based upon the other separate defenses, and stands or falls with them.

The motion to strike the fourth separate defense to the second count will be denied.

E. It is contended by the defendants, under the fifth and seventh separate defenses to the first and second count, that on December 28th, 1927, the Fidelity Union Title and Mortgage Guaranty Company had no authority to grant an extension for payment of the mortgage, in return for which extension Peter Pavlovsky, ancestor of the defendants, and Bessie Pavlovsky, his wife, executed a covenant with the said guaranty company to pay the principal and interest on the bond and mortgage; and that therefore,. the covenant of Peter Pavlovsky was without consideration. It is agreed that the original bond and mortgage were executed by Peter Pavlovsky to the guaranty company on December 12th, 1924. On the following day, the bond and mortgage were assigned by the guaranty company to the Fidelity Union Trust Company, as trustee, under the will of one William Runkle, subject to the terms of a guaranty policy issued by the guaranty company to the trustee. By the terms of the said guaranty policy, the guaranty company was reserved certain rights pertaining to the bond and mortgage. On December 28th, 1927, while the bond and mortgage was still in the ownership of the trust company, the guaranty company granted the extension in question and Peter Pavlovsky and Bessie Pavlovsky, his wife, covenanted to pay the bond and mortgage.

It is stated by the plaintiff in its affidavit, that on January 6th, 1931, the trustee reassigned the bond and mortgage, together with the extension agreement, to the guaranty company. Defendants deny, by their affidavit, that the extension agreement was included or even referred to, in the reassignment.

It appears, then, that if the extension agreement was without authority, ratification by reassignment raises a· disputed issue of fact.

The authority to grant the extension is sought to be based upon the following excerpt from the guaranty policy:

"By the acceptance of this guaranty the Company is made irrevocably the agent of the assured until the bond and mortgage be paid, with the exclusive right, but at its own expense, to sue for and receive the proceeds of any policy of title insurance and of any policy of fire or other insurance covering the mortgaged premises, to collect the interest on the bond and

mortgage hereby gauaranteed and to exercise every mortgagee's option or privilege in said bond and mortgage or either of them contained; and the assured agrees, until the breach or termination of this guaranty, to refrain from exercising any such option or privilege and from collecting any part of said proceeds of title insurance and of fire or other insurance and of said interest and principal secured by said bond and mortgage except through the Company, and to permit the Company to retain out of the said proceeds so much as may remain after paying to the assured whatever may be due the assured for principal and interest."

This clause gave no authority to the guaranty company to extend the time for payment. The agreement not to collect the principal and interest except through the guaranty company, did not give the guaranty company the power to extend time of payment. The agreement, on the part of the assignee, to refrain from collecting the interest and principal was limited to "until the breach or termination of this guaranty." It will be noted that the clause in question, in so far as it applies, makes the guaranty company "irrevocably the agent of the assured;" that is, if the guaranty company, as agent had the authority to extend the time for payment, it was beyond the power of the assignee to revoke that power. The granting of such an extension by the guaranty company, would then become a matter of right and not merely one of authority.

If the guaranty company were given the right to extend the maturity of the bond and mortgage, it could forever prevent breach of the guaranty by merely paying the interest and continually extending the time for payment of the principal; that is, it could, by its own act, forever prevent the assignee from collecting the principal of the bond.

It follows then, that the irrevocable agency to grant an extension of the time for payment of principal, cannot reasonably be read into the policy.

It is apparent then, that the title company could not extend the mortgage as a matter of right.

The motion to strike the fifth and seventh defenses will be denied.

An order will be entered accordingly.