AMERICAN-ITALIAN BUILDING AND LOAN ASSOCIATION OF ELIZABETH, NEW JERSEY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. FRANK LIOTTA AND CATHERINE CASTRANUOVA LIOTTA, DEFENDANTS-RESPONDENTS.

Submitted October 30, 1936—Decided January 28, 1937.

For the appellant, *Nicholas A. Tomasullo* and *Maurice A. Scotch.*

For the respondents, *Eugene Liotta.*

*Amici curiæ, John Warren, Allen B. Endicott, Jr.,* and *Israel B. Greene.*

*Amicus curiæ, John Lloyd, Jr.*

The opinion of the court was delivered by

PERSKIE, J.   By concession, the basic question requiring decision, in this cause, is whether the failure to join a tenant, here a monthly tenant, as a party defendant to a foreclosure suit, and the barring of his interest, constituted a valid defense to a suit thereafter instituted by the mortgagee against the mortgagors on the bond of the latter, and which bond was secured by the mortgage so foreclosed, for the resultant deficiency arising from the foreclosure of the mortgaged premises.

The facts are not in dispute.   Respondents, who were defendants below, executed and delivered their bond to appellant, who was the plaintiff below, in the penal sum of $30,000 conditioned for the payment of the just sum of $15,000. This bond was secured by a building and loan association mortgage on respondents' property located in Elizabeth, New Jersey.   Respondents defaulted; appellant took possession of the mortgaged premises.   One Chauncey Holmes was at the time a tenant in possession of part of the premises so taken.   Holmes attorned to appellant and continued in possession of the premises in pursuance of an agreement with appellant as a monthly tenant.   About two years after appellant had taken possession of the premises, as aforesaid, it filed a bill in chancery to foreclose the mortgaged premises but did not make Holmes a party defendant to the suit.   The deficiency arising out of the foreclosure amounted to $8,768.62.

Thereafter appellant instituted the instant suit against respondents on their bond to recover the aforesaid deficiency. Respondents filed a general denial of liability in the premises, and, in addition thereto, set up the separate defenses (1) that appellant was not entitled to recover because it failed to join Holmes as a party defendant to the foreclosure suit, and thus failed to comply with the provisions of the act relating to the procedure on bond where debt is not satisfied by foreclosure (*Pamph. L.* 1880, *p.* 255, amended by *Pamph. L.* 1881, *p.* 183; 3 *Comp. Stat.* 1709-1910, *p.* 3421, as further

amended by chapter 82, *Pamph. L.* 1933, *p.* 172), and, (2) that appellant had not exhausted its security before it had instituted the instant suit on respondents' bond.

Proofs were taken and the truth of the facts as stated by respondents in their answer was admitted; their legal efficacy only was challenged.

The learned trial judge concluded "that the statute requires that all tenancies in the mortgaged premises be foreclosed as a condition precedent to a deficiency action," and since it was conceded that Holmes was not made a party defendant to the foreclosure suit, he directed that "judgment be entered in favor of the defendants and against the plaintiff." It is the propriety of the judgment so entered that is here challenged.

In addition to the briefs of counsel for the respective parties, we are favored, by leave of the court, with a brief of *amici curiæ* who "represent plaintiffs in deficiency suits on mortgage bonds" in which defendants have raised the same points raised by respondents in the case at bar, and, in addition thereto, we are also favored, by like leave, with a brief of *amicus curiæ* in support of respondents' judgment the affirmance of which may be dispositive of a case in which client of *amicus curiæ* is similarly affected.

We are told, in effect, how changed housing conditions finds the city dweller housed in apartment houses built for investment; how the probable and anticipated income from such houses motivates such building operations and induce mortgagors to make mortgage loans to finance such constructions. We are told further that unless an apartment can be rented for money sufficient to pay all carrying charges and also pay a fair return on the investment to the "venturesome owner" a mortgage loan on such proposed structure would be a bad investment: that gross income from rentals, less operating expenses, &c., form the basis for determining the fair value of the mortgaged premises. Then we are told, notwithstanding all that has been written, that lenders make their loans relying chiefly on the ability of the bondsmen to pay the carrying charges, &c., under all other circumstances, and that to affirm the judgment below large money lenders would not

be likely to make further loans in this state. All of which is very interesting; it may perhaps be so. But, the difficulty is that these statements find no support in the proofs. They are not within the pleadings and issues presented; they are, therefore, beside the point.

We are not, under the proofs submitted and points argued, called upon to make any determination, and we do not do so, as to the various and varying factors, and their relative values, which may or may not form the basis upon which money lenders, large or small, may, at a given time, make a loan secured by a mortgage. That is the sole function and responsibility of the lender. And although loans made by building and loan associations are largely regulated by statute (chapter 65, *Pamph. L.* 1925, *p.* 189, and the several amendments and supplements thereto), nevertheless, the responsibility is that of its directors who are charged with the duty of managing and directing its business and affairs.

Our function in this case is a limited and narrow one. We are called upon to make a judicial determination only of the language employed in the applicable statute. This statute by popular name is known as the Vail act. It provides as follows:

"That in all cases where a bond and mortgage has or may hereafter be given for the same debt, all proceedings to collect said debt shall be, first, to foreclose the mortgage, and if at the sale of the mortgaged premises under said foreclosure proceedings the said premises should not sell for a sum sufficient to satisfy such debt, interest and costs, then and in such case it shall be lawful to proceed on the bond for the deficiency, and that all suits on said bond shall be commenced within three months from the date of the sale of said mortgaged premises, and judgment shall be rendered and execution issue only for the balance of debt and costs of suit * * *." *Pamph. L.* 1880, *p.* 255, as amended by *Pamph. L.* 1881, *p.* 184; *Pamph. L.* 1933, *p.* 172.

The pertinent provisions of the statute (first, to foreclose the mortgage) has been on our books since 1880 and 1881. In one of the land-mark cases of our state (*Baldwin* v. *Flagg,* 43 *N. J. L.* 495), the Supreme Court, by Mr. Justice Depue,

said (at *p.* 503): "\* \* \* Its purpose and intent were obviously to confer upon the obligor named, in a bond secured also by a mortgage, a substantial advantage he did not have before the act was passed. Upon such an obligation, the obligee, prior to this act, had two remedies, the fruits of which were entirely different. He might enforce the lien of the mortgage upon the mortgaged premises by a suit for a foreclosure, and also sue on the bond, and recover a judgment *in personam,* enforceable by an execution and levy on all the property of the obligor, real and personal. This suit he might bring as soon as the bond became due and payable. Such a suit, by the act of 1881, is postponed until a decree of foreclosure and a sale of the mortgaged premises under it shall be obtained. \* \* \*"

That pronouncement stands unchallenged. It is clear that the procedure thus prescribed by legislature placed the obligor whose bond is secured by a mortgage in a favored class. The obligee, as a condition precedent to a suit on a bond so secured, must first foreclose the mortgage. Does the mortgagee comply with the statute if, and when, as here, he fails to join a monthly tenant as a party defendant to such a foreclosure suit? We think not.

We have held, following the great weight of authority and the soundness thereof is not questioned, that unless a tenant is made a party defendant to the foreclosure suit his interest is unaffected thereby. *Ellveaay Newspapers, &c., Assn.* v. *Wagner Market Co.,* 110 *N. J. L.* 577; 166 *Atl. Rep.* 322; *affirmed,* 112 *N. J. L.* 88; 169 *Atl. Rep.* 692. Counsel for appellant argues that Holmes' interest could not be cut off since his right flowed not from the mortgagors but from the mortgagee in possession. On that argument counsel concedes that "it would be otherwise if Holmes at the time of the foreclosure proceedings had been a tenant claiming through Liotta and wife [mortgagors] without possession having been taken by the mortgagee in which event it would have been necessary to include Holmes as a defendant, so that the mortgagor and all persons who acquired rights or interests under him would be before the court." But we have held that (as

to liability of a lessee for rent under a lease not joined in a foreclosure suit) it is a matter of legal unconcern to a tenant which has attorned to the new owner of the reversion, and has enjoyed the undisturbed possession of the premises, whether the new ownership of the reversion was acquired by foreclosure proceedings to which the tenant was not a party, or whether the ownership was acquired by purchase, gift, devise or otherwise, to which the tenant is likewise no party. *Ellveaay Newspapers, &c., Assn.* v. *Wagner Market Co., supra.* The same principle holds true under the proofs here exhibited.

The tenant's unaffected obligations and rights under a lease not cut off by foreclosure clearly gives him the right to possession. It is perhaps true that failure to join a tenant obligated under an advantageous lease may, under certain circumstances, increase the sale of the property affected, and that failure to join a tenant obligated under a disadvantageous lease may deter public bidding. But it is also true that both an advantageous or a disadvantageous lease may deter certain class of bidders. There may be those who are interested in the property for some particular or special purpose requiring immediate possession. And delivery of possession is normally essential to the transfer of a good title, and a vendee may reject title not accompanied by immediate possession, unless the agreement be otherwise. *Eisler* v. *Halperin,* 89 *N. J. L.* 279; 98 *Atl. Rep.* 245.

We thus recur to the plain language of the statute: "First, to foreclose the mortgage." What does it mean? We are of the opinion that it means a foreclosure that will result in a complete exhaustion of the property and all interest therein. It therefore follows when, as here, the possession of the tenant remains undisturbed after the foreclosure that there has been neither a complete exhaustion of the property nor an exhaustion of his interest therein. Thus the requirements of the statute remain unsatisfied.

We apprehend that no one would gainsay that if the term of Holmes' lease had been for ninety-nine years that a foreclosure without joining him would not constitute a complete exhaustion of the property or of his interest therein. The

principle it seems to us, is the same whether the tenant is in possession by virtue of a lease for a long term or, as here, for a short term.

In fine, in addition to what has already been written, we choose to, and do, adopt the reasoning stated and the construction placed upon the statute by Mr. Justice Lloyd in the case of *Deal Park Co.* v. *Bannard,* 2 *N. J. Mis. R.* 194. He said:

"* * * It seems to me that nothing short of a complete exhaustion of the property and all interests therein must be had to satisfy the requirements of the statute. To hold otherwise would be to permit frauds upon the statute and upon the obligor, and frustrate the purpose of the law.

"Nor do I think that the defendant is estopped by her failure to raise the question in the foreclosure. The predicament of the plaintiff is a creature of the statute and his own failure to include all interests. Foreclosure is made a condition precedent to the right to proceed on the bond. Nonjoinder of necessary parties might have been availed of by the defendant, but not upon the ground nor by reason of the subsequent disability of the plaintiff which he was imposing upon himself. Such an objection could only be made when the plaintiff sought to avail himself of the proceedings taken and which he alone controlled. If objection had been made in the foreclosure suit, the defendant would very properly have been told that such was not his concern. As to this question the plaintiff could proceed against all or a part of the owners of the fee, taking the chances of the sufficiency of his course to meet the conditions of the statute."

We find no merit to the other points argued.

Judgment is affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, BODINE, PERSKIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 11.

*For reversal*—THE CHANCELLOR, CASE, HEHER, HETFIELD, JJ. 4.