746 A.2d 1034 (2000)
329 N.J. Super. 54
DAVIN, L.L.C., a New Jersey Limited Liability Company, Plaintiff-Appellant,
v.
Ahmad DAHAM and Mohammad Issa Hamid, Defendants/Third Party Plaintiffs-Respondents/Appellants,
v.
William J. Kress, Jr, and Maryann Kress, h/w; Franklin Seafood, Inc.; Steven Nacca; Murphy Realty-Better Homes & Gardens; Stern, Lavinthal, Norgaard & Daly; Davin Corp.; Vincent Locurcio; Vincent Locurcio, Jr.; Vincent Locurcio, III; Valley National Bank; Thomas Infusino; Nutley Shoprite; New Jersey Economic Development Authority, jointly, severally and individually, Third-Party Defendants. and
Robert Jaffe, Esq.; Donald C. Goins, Esq.; Goins and Goins, Third Party Defendants/Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1999.
Decided March 6, 2000.
*1037 Anthony F. Malanga, Jr., Bellville, for plaintiff-appellant Davin, L.L.C. in A-6535-97T3 (Gaccione, Pomaco & Beck, attorneys; Mr. Malanga, of counsel and on the brief).
Howard D. Spialter, Union, for defendants/third party plaintiffs-respondents/appellants Ahmad Daham and Mohammad Issa Hamid in A-6636-97T3 and respondents Ahmad Daham and Mohammad Issa Hamid in A-6535-97T3 (Mr. Spialter, of counsel and on the brief).
John C. Kennedy, West Orange, for third party defendant/respondent Robert Jaffe in A-6636-97T3 (O'Donnell, Kennedy, Vespole & Piechta, attorneys; Mr. Kennedy, of counsel and on the brief).
John O. Goins, Union, for third party defendants/respondents Donald C. Goins and Goins and Goins in A-6636-97T3 (Mr. Goins, on the brief).
Before Judges KESTIN, WEFING and STEINBERG. *1035
*1036 The opinion of the court was delivered by STEINBERG, J.A.D.
These inter-related appeals arise out of a common transaction and were argued together. We therefore consolidate them for the purposes of this opinion. In A-6535-97, plaintiff Davin, L.L.C. sought to eject defendants Ahmad Daham and Mohammad Issa Hamid from the property that is the subject of this dispute. It appeals from the denial of its motion for summary judgment and the grant of defendants' cross-motion for summary judgment dismissing plaintiff's complaint. In A-6636-97, defendants appeal from an order denying their motion for summary judgment and granting the cross-motions for summary judgment of third-party defendants, Robert Jaffe, Esquire, Donald A. Goins, Esquire, and Goins and Goins which resulted in a dismissal of their malpractice claim. We affirm in part, and reverse in part.
Plaintiff sought to eject defendants from a store in which they operate a bagel shop and delicatessen. The store is in a four-unit commercial shopping center located at 469 Franklin Avenue, Nutley, New Jersey. The shopping center was owned by William J. Kress, Jr. and Maryann Kress (Kresses), who are not parties to this appeal. The Kresses controlled a corporation, Franklin Seafood, Inc. (FSI), which operated a retail store in one of the units in the shopping center.
On September 29, 1988, the Kresses obtained a construction loan for $562,500 from Nutley Savings & Loan Association (Nutley) to build the shopping center. The loan was secured by a construction mortgage on the property. The Kresses defaulted on the loan. Nutley was also having financial difficulties, was ultimately declared insolvent, and was placed into receivership by the Resolution Trust Corporation (RTC) which succeeded to Nutley's assets and liabilities. In June 1993, MIF Realty, L.P., a partnership and subsidiary of GE Capital, acquired the note and mortgage from RTC. In December 1993, Valley National Bank (Valley National) acquired the note and mortgage by assignment from MIF Realty for $375,000.
Under the terms of a letter agreement dated November 23, 1993, Valley National had agreed to act as the servicing agent for Thomas P. Infusino regarding the purchase of the loan from MIF Realty. That agreement authorized Valley National to commence foreclosure proceedings immediately following its acquisition of the note and mortgage. The letter agreement also obligated Valley National to convey title to the shopping center to Infusino should *1038 Valley National ultimately acquire title to the shopping center, provided Infusino had satisfied his payment obligations to Valley National. Infusino apparently wanted the property because it was next door to a supermarket he operated, and he wanted to use it to expand the parking area, or the supermarket itself. In fact, in February 1992, Infusino had negotiated with the Kresses for the purchase of the shopping center.
The agreement was amended on February 28, 1995, to include Vincent LoCurcio, Jr. as a "co-borrower" with Infusino. The November 23, 1993 letter agreement was presented to the Board of Directors of Valley National for its consideration. On November 29, 1993, the Board of Directors unanimously approved the transaction. Infusino, who was a member of Valley National's Board of Directors at the time, abstained from the vote.
On February 7, 1994, Valley National instituted a foreclosure action. Thereafter, on March 7, 1994, Valley National filed a notice of lis pendens in the Office of the Register of Essex County. On May 3, 1994, the Kresses transferred title to the shopping center to FSI. Jaffe prepared the deed. On May 27, 1994, the Kresses, represented by Jaffe, filed an answer and counterclaim in the foreclosure action. On October 15, 1994, while Valley National's motion for summary judgment in the foreclosure action was pending, the Kresses filed a Chapter 11 bankruptcy petition. Jaffe prepared the petition. Consequently, the foreclosure action was placed on the inactive list.
Presumably because of the transfer of the shopping center by the Kresses to FSI, Valley National moved to restore the foreclosure action to the active list. The Kresses, represented by Jaffe, successfully sought to remove the foreclosure action to the federal court. Valley National then successfully moved to dismiss the Kress' bankruptcy petition and to remand the foreclosure action to the Chancery Division. Two days before Valley National's motion for summary judgment was to be argued, Jaffe filed a Chapter 11 petition for FSI, and requested the Chancery Division to stay the motion for summary judgment. That application was denied, and the Kresses answer and counter-claim was stricken. Finally, Valley's application for relief from the automatic stay regarding FSI was granted, and a final judgment of foreclosure was entered on December 8, 1995. On March 26, 1996, Valley National was the successful bidder at the sheriff's sale.
Pursuant to its repurchase and service agreement with Infusino and LoCurcio, Valley National assigned its interest in the bid to Davin Corporation (Davin). The sheriff accordingly issued a deed to Davin, which, in turn, transferred its interest in the shopping center to plaintiff, which is controlled by Infusino, LoCurcio, and their sons, David Infusino and Vincent LoCurcio, III.
Meanwhile, on June 30, 1995, approximately thirteen months after the Kresses filed an answer and counter-claim to the foreclosure complaint, they entered into a lease with defendants for the premises in question. The lease was prepared by Jaffe. The twenty-sixth paragraph of the lease contained a covenant of quiet enjoyment.
Apparently neither Jaffe nor the Kresses advised defendants of the pending foreclosure. According to defendants, in order to operate a retail bagel shop, they made substantial expenditures involving, among other things, the installation of fixtures, equipment, and improvements. It took approximately four months to complete the work. By affidavit, defendants contend that there were numerous contractors working on the premises and their activities were visible to the public. They contend that they spent in excess of $125,000 in material and labor.
A-6636-97 involves defendants' third-party complaint filed against Jaffe, Donald C. Goins, Esquire, and Goins and Goins, *1039 P.A. Defendants had engaged Donald C. Goins (Goins) to represent them in the lease transaction with the Kresses. Goins reviewed the proposed lease, prepared a proposed addendum to that lease and forwarded it Jaffe. The lease and addendum were ultimately signed by the parties. Throughout the negotiations Jaffe never mentioned to defendants or Goins that the property was in foreclosure, and also never advised them of the circumstances surrounding the foreclosure. Moreover, as we have indicated, the lease contained a covenant of quiet enjoyment. Goins never recommended to defendants that they obtain a title search. In their third-party complaint, defendants alleged that Goins committed professional malpractice. They also alleged that Jaffe knew or should have known that they would be relying upon the truthfulness of "the contents, information and representations as set forth in the subject lease agreement". They further alleged that Jaffe owed an unspecified duty to them and negligently discharged that duty.
In the ejectment action, plaintiff and defendants filed cross-motions for summary judgment. The motion judge granted defendants' motion, denied plaintiff's motion, and entered an order dismissing the complaint. Regarding the third-party complaints, the motion judge denied defendants' motions for summary judgment against Jaffe and Goins, and granted summary judgment in favor of Jaffe, Goins, and Goins and Goins, resulting in the dismissal of the third-party complaint.
Plaintiff contends on appeal that the motion judge erred in granting defendants' motion for summary judgment and in denying plaintiff's motion for summary judgment. In their appeal, defendants contend that the trial judge erred in granting summary judgment in favor of Jaffe and Goins.

I

A
We first consider plaintiff's contention that it was entitled to summary judgment on its complaint for ejectment of defendants. Plaintiff claims that it is entitled to possession of the property since no landlord and tenant relationship existed between it and defendants. It is well-settled that as long as a mortgage was in existence prior to the execution of a lease between a mortgagor and a tenant, the mortgagee, upon default of the mortgage, may foreclose upon the leasehold and obtain an order for possession against the mortgagor's tenant. Guttenberg S. & L. Ass'n. v. Rivera, 85 N.J. 617, 626-27, 428 A.2d 1289 (1981)[1]; American-Italian B. & L. Ass'n v. Liotta, 117 N.J.L. 467, 189 A. 118 (E. & A.1937). Therefore, ordinarily, unless an existing tenant is made a party defendant to the foreclosure suit, his interest is unaffected thereby. American-Italian B. & L. Ass'n of Elizabeth v. Liotta, supra, 117 N.J.L. at 471, 189 A. 118. Here, the tenancy was entered into not only after the execution of the mortgage, but also after the foreclosure was instituted and a notice of lis pendens filed. In these circumstances, we conclude that defendants, as tenants, took their leasehold *1040 interest subject to the mortgage and subject to ejectment since it was subsequent in time to the mortgage, and subsequent in time to the foreclosure and filing of the notice of lis pendens. Therefore, we conclude that the motion judge erred in determining that plaintiff was not entitled to eject defendants. However, that does not end the inquiry.

B
We next consider defendants' contention that plaintiff is equitably estopped from ejecting them from the premises. Preliminarily, we note that the motion judge never reached the issue of the applicability of the doctrine of equitable estoppel in light of his grant of summary judgment to defendants. We recognize that the doctrine of equitable estoppel is applied only in very compelling circumstances. Palatine I v. Planning Bd., 133 N.J. 546, 560, 628 A.2d 321 (1993). Nevertheless, it is to be applied "where the interests of justice, morality and common fairness clearly dictate that course". Ibid. The doctrine of estoppel is invoked to do equity. O'Neill v. State Hwy. Dept., 50 N.J. 307, 319, 235 A.2d 1 (1967). The doctrine of equitable estoppel prevents a party from repudiating prior conduct if such repudiation "would not be responsive to the demands of justice and good conscience". Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880 (1979). The doctrine is founded on the fundamental principles of justice and good conscience, O'Malley v. Department of Energy, 212 N.J.Super. 114, 122, 514 A.2d 69 (App.Div.1986), rev'd on other grounds, 109 N.J. 309, 537 A.2d 647 (1987), and is designed to prevent the inequitable assertion or enforcement of claims or rights which might have existed, unless prevented by the estoppel. Thomas v. Camden Trust Co., 59 N.J.Super. 142, 150, 157 A.2d 355 (Law Div.1959). The effect of the doctrine is to create, from motives of equity and fair dealing, opposing rights for the party seeking to obtain the benefit of the estoppel. Ibid. The burden of proof of a claim based on principles of equitable estoppel is on the party asserting estoppel. Miller v. Miller, 97 N.J. 154, 163, 478 A.2d 351 (1984).
In order to establish a claim of equitable estoppel,
the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act as to change his or her position to his or her detriment.

[Ibid.]
With these principles of law in mind and for guidance of the parties on remand, we now consider whether defendants are entitled to invoke the doctrine of equitable estoppel. At his deposition, LoCurcio testified that he noticed defendants' bagel store in the premises "when they moved in". However, later in his deposition he said that defendants were already in the premises when he first started negotiations with Valley National regarding the purchase of the note. Subsequently, he equivocated on that issue. However, on cross-examination, LoCurcio conceded that the shopping center was visible from his office. LoCurcio also conceded that he drove by the shopping center on the days when he went there to work. In addition, LoCurcio said that he discussed defendants' presence with Valley National. At his deposition, Infusino testified that he drove by the shopping center five or six days a week on his way to his office.
In opposition to plaintiff's motion, defendants supplied a certification of Daham setting forth the activities undertaken to prepare the retail bagel store for operation. He said the work took approximately four months with an average of five or six working days per week. In addition, he said there were numerous persons working in the premises, with contractors' *1041 vehicles parked in the parking lot. He contends that LoCurcio and Infusino must have been aware of the work being done if they drove by to go to work. He further stated that he expended a sum in excess of $125,000 in material and labor.
We conclude that there is a genuine issue of material fact as to whether plaintiff, which was acting at all times on behalf of LoCurcio and Infusino, is estopped from seeking to eject defendants from the premises. Defendants presented sufficient evidence which would permit a fact-finder to conclude that plaintiff, acting through LoCurcio and Infusino, was aware that defendants were making substantial expenditures to make the premises ready for occupancy, while at the same time LoCurcio and Infusino were having Valley National foreclose the mortgage so that they could obtain title for their own benefit and ultimately eject defendants. Indeed, after obtaining relief from the automatic stay of the bankruptcy court, but prior to final judgment being entered in the foreclosure action, Valley National's application for a rent receiver was approved. The rent receiver collected three months rent from the tenants, including defendants. We reject plaintiff's contention that equitable estoppel does not apply in light of defendants' concession that they had no conversation with LoCurcio, Infusino, or anyone on behalf of Davin. Equitable estoppel may arise by silence or omission where one is under a duty to speak or act. Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 504, 117 A.2d 585 (1955). If defendants can establish that LoCurcio and Infusino were aware of the fact that defendants were incurring substantial expenditures in preparing the bagel shop for operation, while at the same time LoCurcio or Infusino, or their surrogates, were seeking to foreclose upon the mortgage and ultimately evict them, we conclude that plaintiff, through LoCurcio and Infusino, had a duty to advise defendant of their perilous position and may be equitably estopped from seeking to eject defendants.
Alternatively, on remand, defendants should have the opportunity to develop an alternative claim for damages against plaintiff. Since we have concluded that plaintiff, through LoCurcio and Infusino, had a duty to advise defendants of the perilous position they were in, we leave to the trial court to explore on remand whether the breach of that duty is best remedied through application of the principles of estoppel or an award of damages, based upon how the facts are developed at trial.
We have concluded that the motion judge erred in his determination that the failure to include defendants in the foreclosure action precludes a determination that the tenancy is terminated. Accordingly, we need not consider plaintiff's alternative argument that the resultant tenancy should be a month-to-month tenancy. If, on remand, it is determined that plaintiff is estopped from ejecting defendants, defendants would then be entitled to remain in the premises for the balance of the term of the lease, assuming they comply with its terms and conditions.

II
We next consider defendants' contention that the motion judge erred in dismissing their third-party complaint against Goins, as well as the firm of Goins and Goins.[2] In support of the motion for partial summary judgment, defendants submitted an affidavit of Allen J. Barkin, Esq. who has been licensed to practice law in New Jersey since 1981, with "particular experience *1042 in banking and foreclosure transactions as well as commercial lease negotiations and transactions". In his affidavit Barkin stated:
4. Prudent practice in a commercial lease transaction requires that the attorney for the tenant take various steps to determine that the purported landlord is in a position to give the tenancy described in the lease. The most basic step would be to cause a search of the title to be done. The attorney could do this either personally or contract it out to a search or title agency.
5. If a search of the premises had been done prior to the lease being finalized, the Notice of Lis Pendens would have been discovered. Daham would have been alerted to the pending foreclosure. Goins could then have advised Daham that the foreclosure would have the effect of terminating the lease that was being negotiated. Daham could then have decided whether the investment of time and money they were about to make in the premises was justified in light of the pending action. Without that information, Daham was allowed to wrongly assume that the covenant of quiet enjoyment included in the lease could be relied upon for the term of the lease and the option periods.

* * * * *
7. Accordingly, there is a reasonable probability that the care, skill or knowledge exercised or exhibited in the advice, representation, and work of the aforesaid attorneys fell outside the acceptable professional or occupational standard or practices.
In opposition, Goins submitted a report of Stephen M. Flatow, Esq. who had been "employed and affiliated with the title insurance and search industry since September 1973", and who, for the past sixteen years, had been Vice President and Counsel of Vested Title, Inc. According to Flatow, he could recall only "a handful of applications" for a search to determine the status of landlord's title to leasehold premises. He opined that "[t]he ordering of title work in this matter would have been an extraordinary step and one that is not ordinarily taken by thousands of other attorneys".
Goins also submitted an affidavit of Walter P. Laufenberg, Esq. who opined that "it would not be standard or common practice when reviewing a commercial lease of this size or duration to order a Title Search".
Relying on his prior extensive experience as a practicing attorney, the judge stated that an attorney for a tenant never orders a title search before advising his or client to enter into a lease. We disagree. In light of the conflicting certifications, there was a genuine issue of material fact as to whether Goins should have ordered a title search in properly representing defendants. This was a material fact precluding an award of summary judgment and requiring submission of the issue to the ultimate finder of fact. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). The judge also dismissed the malpractice claim against Goins because he had ruled in favor of defendants when he concluded that the failure to include them in the foreclosure action prevented plaintiff from ejecting them. Because our reversal necessitates a remand to consider the question of equitable estoppel, and the alternative issue of damages, it has not yet been determined that defendants are entitled to possession of the premises.
We note that in appropriate circumstances, a client may be entitled to recover the costs of litigation in a professional malpractice action. See Saffer v. Willoughby, 143 N.J. 256, 272, 670 A.2d 527 (1996) (a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client who is successful in prosecuting a legal malpractice action); accord, Bailey v. Pocaro *1043 & Pocaro, 305 N.J.Super. 1, 5, 701 A.2d 916 (App.Div.1997).
We therefore reverse that portion of the order dismissing the third-party complaint against Goins. In counseling a client, a lawyer must advise the client of the risks of the transaction in terms which are sufficiently clear to enable the client to assess them. Conklin v. Hannoch Weisman, 145 N.J. 395, 413, 678 A.2d 1060 (1996). The care exercised by the attorney must be commensurate with the risks undertaken and tailored to the needs and sophistication of the client. Ibid. Lawyers owe a duty to their clients to provide their services with reasonable knowledge, skill, and diligence. Ziegelheim v. Apollo, 128 N.J. 250, 260, 607 A.2d 1298 (1992). An attorney is, therefore, obligated to exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise. St. Pius X House of Retreats v. Camden Dioc., 88 N.J. 571, 588, 443 A.2d 1052 (1982). Where an attorney breaches his duty, he is answerable in damages for those losses which are proximately caused by his negligence. Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 341, 419 A.2d 417 (1980); Lamb v. Barbour, 188 N.J.Super. 6, 12, 455 A.2d 1122 (App.Div.1982), certif. denied, 93 N.J. 297, 460 A.2d 693 (1983). The burden of proving the causal relationship is upon the client. Ibid. Based upon the current record, defendants have presented a genuine factual issue whether Goins was negligent in failing to order a title search. The fact-finder must determine whether Goins was, in fact, negligent, and whether defendants suffered damages that were proximately caused by that negligence.
Furthermore, we reject Goins' contention that the court should not have considered Barkin's affidavit because it did not contain a curriculum vitae. The fact that Barkin stated in his affidavit that he was an attorney-at-law was sufficient to permit the court to consider the affidavit and is sufficient for us to conclude that a genuine factual issue exists.

III
We next consider defendants' contention that the motion judge erred in granting summary judgment in favor of Jaffe. One of the bases of that decision was the motion judge's conclusion that defendants had prevailed in the ejectment action. We reject that rationale for the same reason we have rejected it in concluding that the motion judge erred in granting summary judgment to Goins. We note in this regard as well that even if defendants prevail in the ejectment action they still may have a valid claim for recovery of their litigation expenses. Saffer v. Willoughby, supra, 143 N.J. at 272, 670 A.2d 527; Bailey v. Pocaro, supra, 305 N.J.Super. at 5, 701 A.2d 916. Moreover, the motion judge concluded that Jaffe owed no duty to defendants since he had never represented them or spoke to them, and would have been acting adversely to the best interests of his clients, the Kresses, if he advised defendants of the Kresses' financial difficulties. We also disagree with that rationale.
The question of whether a duty exists is a matter of law to be decided by the court. Carvalho v. Toll Bros. and Developers, 143 N.J. 565, 572, 675 A.2d 209 (1996); Zielinski v. Professional Appraisal Associates, 326 N.J.Super. 219, 226, 740 A.2d 1131 (App.Div.1999). The determination of the existence of a duty ultimately is a question of fairness and policy. Snyder v. American Ass'n of Blood Banks, 144 N.J. 269, 292, 676 A.2d 1036 (1996); Wang v. Allstate Ins. Co., 125 N.J. 2, 15, 592 A.2d 527 (1991).
In determining whether a duty exists, the court must identify, weigh and balance the following factors: the relationship of the parties; the nature of the attendant risk; the opportunity and ability to exercise care; and the public interest in the proposed solution. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d *1044 1110 (1993). The "analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct". Ibid.
Whether an attorney owes a duty to a non-client third-party depends on balancing the attorney's duty to represent clients vigorously, Rules of Professional Conduct, Rule 1.3, with the duty to refrain from knowingly making a false statement of material fact or law to a third person, Rules of Professional Conduct, Rule 4.1; Petrillo v. Bachenberg, 139 N.J. 472, 479, 655 A.2d 1354 (1995).[3] Accordingly, attorneys may owe a duty of care to non-clients in situations in which the attorneys know or should know that the non-client would rely on the attorney's representations, and the non-client is not too remote from the attorney to be entitled to protection. Petrillo v. Bachenberg, supra, 139 N.J. at 483-84, 655 A.2d 1354.
In Petrillo, supra, the Supreme Court held that a prospective purchaser of real estate could maintain an action against an attorney who had prepared and delivered to the seller, in its prior capacity as a real estate broker, the composite report of some, but not all, of the percolation tests performed on the property. The Court held that the attorney assumed a duty to the purchaser to provide reliable information regarding the percolation tests and a jury question was presented as to whether the attorney breached that duty and whether such breach caused the purchaser harm. Id. at 487-89, 655 A.2d 1354.
In addition, we have held that attorneys may owe a limited duty in favor of specific non-clients. See Atlantic Paradise v. Perskie, Nehmad, 284 N.J.Super. 678, 685-86, 666 A.2d 211 (App.Div.1995), certif. denied, 143 N.J. 518, 673 A.2d 276 (1996) (an attorney preparing a public offering statement for a proposed condominium owes a duty to prospective purchasers to state conditions correctly); Zendell v. Newport Oil Corp., 226 N.J.Super. 431, 439, 544 A.2d 878 (App.Div.1988) (an action may be maintained against a law firm which provided legal assistance in a partnership offering for negligently allowing the offering of unregistered interests even though no fiduciary or attorney-client relationship existed between prospective purchasers and the law firm); R.J. Longo Const. Co. v. Schragger, 218 N.J.Super. 206, 209-10, 527 A.2d 480 (App.Div.1987) (township attorneys who prepared contract documents to be used by the public in the bidding process for the construction of a sewer facility and who admitted that they were responsible for obtaining easements that the township was required to obtain under the contract could be held liable to the successful bidder for economic losses sustained due to the negligent failure to obtain the easements); Albright v. Burns, 206 N.J.Super. 625, 632-34, 503 A.2d 386 (App.Div.1986) (an attorney may be liable to a decedent's estate when, notwithstanding an absence of privity, the attorney knowingly facilitated improper transactions involving the holder of the decedent's power of attorney); Stewart v. Sbarro, 142 N.J.Super. 581, 593, 362 A.2d 581, certif. denied, 72 N.J. 459, 371 A.2d 63 (1976) (Failure of attorney for the buyers of a corporation to obtain the buyers' signature on a bond and mortgage indemnifying the sellers against liability for existing corporate debt gives rise to a cause of action in negligence on the part of the sellers against the buyers' attorney. The real dereliction was in not advising seller's attorney within a reasonable time that efforts to obtain the required signatures had been unproductive and in preparing and executing a corporate second mortgage in favor of the buyers despite the fact that he was in possession of documents to which the sellers *1045 were entitled.). Thus, it is clear that in appropriate circumstances we have rejected the notion that an attorney owes no duty to a non-client.
Defendants' claims against Jaffe appear to be based upon their contention that Jaffe owed them a duty to disclose "any factual and/or legal impediments which might follow or encumber the subject lease". Moreover, they contend that Jaffe owed them a duty not to include in the proposed lease a covenant of quiet enjoyment in light of the pending foreclosure.
Subsumed in the question of whether defendants' lack of privity with Jaffe bars their recovery against him is the question of whether Jaffe owed a duty to defendants. Stated another way, if Jaffe owed a duty to defendants, the absence of an attorney-client relationship does not preclude defendants from asserting a cause of action alleging a breach of that duty. As we have previously discussed, an attorney has a duty to represent his or her client effectively and vigorously. However, an attorney also has a duty to act fairly, and in good faith. Among the factors to be considered in determining whether to impose a duty is the potential impact on the public. Snyder v. American Association of Blood Banks, supra, 144 N.J. at 292, 676 A.2d 1036; Carvalho v. Toll Brothers and Developers, supra, 143 N.J. at 573, 675 A.2d 209. When considering the imposition of a duty upon an attorney, we must therefore consider the impact that duty will have upon the public, in general, and the attorney's client's right to vigorous and effective representation. Candor and honesty necessarily requires disclosure of significant facts, even though the disclosure might not be in the interest of the client. In The Matter of Robert J. Forrest, 158 N.J. 428, 433, 730 A.2d 340 (1999) (attorney has obligation to inform trial court that opposing counsel's motion to compel his client to appear for a doctor's examination in connection with a personal injury action was moot due to the client's death); Kath v. Western Media, Inc., 684 P.2d, 98, 100 (Wyo.1984) (duty of fairness and candor required attorney to disclose that he had in his possession a letter written by his client's prior attorney which contradicted testimony given by that attorney at his deposition). The practice of law is a profession, not a business. An attorney is not merely a hired gun, but, rather, a professional required to act with candor and honesty. We conclude that Jaffe, as an attorney who participated to the extent he did in the efforts to stave off foreclosure, had an affirmative obligation to be fair and candid with defendants. Moreover, he had an obligation not to insert the covenant of quiet enjoyment in the lease. He had an obligation to advise his clients, the Kresses, that they should disclose to defendants the fact that the property was in foreclosure. He also had a duty to advise his clients that the lease should not contain a covenant of quiet enjoyment in light of the fact that it was highly unlikely that defendants would obtain the benefits of the covenant in light of the foreclosure. If they failed to follow his advice, he had the right, if not the duty, to cease representing them. Certainly, he had an obligation not to insert the covenant of quiet enjoyment in the lease. The covenant of quiet enjoyment was contained in paragraph 26 of the lease and provided, as follows:
The Landlord covenants and represents that the Landlord is the owner of the premises herein leased and has the right and authority to enter into, execute and deliver this lease; and does further covenant that the Tenant on paying the rent and performing the conditions and covenants herein contained, shall and may peaceably and quietly have, hold and enjoy the leased premises for the term aforementioned.
The lease was for a term of ten years, and in an addendum defendants were given a renewal option for an additional five-year term. When Jaffe prepared the lease, he was keenly and acutely aware of the fact that it was extremely unlikely that *1046 defendants would be able to occupy the premises for the term of the lease. The addendum to the lease consisted of twelve separately numbered paragraphs dealing with provisions such as additional rent; increased rent; renewal option; late fee; utilities; condition of premises; repairs; and attorney's fees. Given the materiality of the Kresses' apparent inability to assure the fact that defendants would be entitled to enjoy the premises for the term of the lease and that Jaffe was aware of that material fact, we merely hold today that Jaffe was obliged to recommend disclosure of that fact to defendants, or their attorney, and cease representation if they fail to follow that recommendation. Instead, Jaffe negotiated with Goins regarding the addendum. He knew the Kress' title to the property went to the very heart of the lease. He knew that as a result of the foreclosure proceedings, and the Kress' apparent inability to stave it off, their title to the property was, to say the least, in a precarious position. Jaffe was aware of that fact. It was highly unlikely that the Kresses would have title to the property for the duration of the period set forth in the lease, including the potential extension. Again, Jaffe was keenly aware of that fact. It was extremely unlikely that the Kresses would be able to comply with the covenant of quiet enjoyment contained in the lease drafted by Jaffe.
In reaching this conclusion we hold that the lawyer's duty of effective and vigorous representation of his client is tempered by his corresponding duty to be fair, candid and forthright. Those duties are neither inconsistent nor incompatible and can be harmonized. We appreciate that Jaffe was in a difficult position. However, the practice of law is not easy. Attorneys are frequently faced with difficult decisions. They must make the right decision. When the fact to be disclosed goes to the very essence of the transaction, the attorney should recommend disclosure. We merely conclude that Jaffe was required to advise his clients to disclose. If the clients insisted that he not disclose, he had the right, and by our opinion today, the duty, to decline to further represent them. At least if disclosure had been made, the tenants would have had the opportunity to consider not entering into the lease. They had the right to know that their tenancy might be short-lived, through no fault of their own. Instead, the tenants, presumably unaware of the foreclosure, entered into a ten-year lease, with a five-year option to renew, and made substantial expenditures, only to learn of a complaint filed against them for ejectment thirteen months later.
The questions of whether the acts of Goins and Jaffe were a proximate cause of damages suffered by defendants, and, if so, what those damages are, are left for resolution by the fact-finder.
As to both appeals, we reverse and remand for further proceedings not inconsistent with this opinion.
NOTES
[1] In Guttenberg, our Supreme Court held that a foreclosing mortgagee of a residential apartment building may obtain an order of eviction under leases that are subordinate to the mortgage without complying with the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, since the Anti-Eviction Act applies only to traditional landlord-tenant relationships and not to that of a mortgagee holding a lien prior to the lease of the tenant in possession. Guttenberg, supra, 85 N.J. at 623-25, 428 A.2d 1289. The Anti-Eviction Act was amended in 1986 and, as a result, the Supreme Court later held, based upon the statutory amendments, that the Anti-Eviction Act now applies to foreclosing mortgagees, protecting tenants from eviction regardless of whether the tenancy was established before or after execution of the mortgage. Chase Manhattan Bank v. Josephson, 135 N.J. 209, 224-26, 638 A.2d 1301 (1994). That holding applies only to residential tenancies that are subject to the Anti-Eviction Act, and leaves undisturbed the basic principle that a lessee whose leasehold interest predates the mortgage must be joined in the foreclosure proceeding.
[2] We note that defendants actually moved for partial summary judgment against third-party defendants, Goins, Goins and Goins, and Jaffe. On the return date of the motion, although third-party defendants had not filed cross-motions for summary judgment, with the acquiescence of counsel for defendants, the judge treated the matter as if they had filed cross-motions for summary judgment and granted them, dismissing the third-party complaint.
[3] A cause of action may not be based solely on a violation of the Rules of Professional Conduct. Baxt v. Liloia, 155 N.J. 190, 201, 714 A.2d 271 (1998). While the Rules of Professional Conduct may provide guidance to the court in determining whether a duty exists, they do not provide an independent cause of action.