**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3780-22

JOHN MIRANDA,

     Plaintiff-Appellant,

and

VICTOR MIRANDA,

     Plaintiff,

v.

ALEXANDER J. RINALDI,
and SALNY, REDBORD
AND RINALDI, Counsellors
at Law,

     Defendants-Respondents.

_____

Argued September 9, 2024 – Decided October 1, 2024

Before Judges Gooden Brown and Chase.

On appeal from the New Jersey Superior Court, Law Division, Hunterdon County, Docket No. L-0136-20.

Shawn D. Edwards argued the cause for appellant (Maselli, Mills & Fornal, PC, attorneys; Paul J. Maselli,

of counsel; Shawn D. Edwards, of counsel and on the briefs; Nicholas J. Loiodice, on the briefs).

John L. Slimm argued the cause for respondents (Marshall Dennehey, PC, attorneys; John L. Slimm and Jeremy J. Zacharias, on the brief).

PER CURIAM

In this legal malpractice action, plaintiff John Miranda appeals from a September 14, 2022, Law Division order granting summary judgment to defendants Alexander Rinaldi, and the law firm Salny, Redbord and Rinaldi, Counsellors at Law, and dismissing plaintiff's claims with prejudice. Plaintiff's claims stem from a will contest arising from plaintiff and his brother, Victor Miranda,[1] contesting their father's will that named their sister, Maria Miranda, as the sole beneficiary. We affirm.

I.

We glean these facts from the motion record, viewed in the light most favorable to plaintiff. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573,

---

[1] Victor and John initiated the legal malpractice lawsuit against defendants, but Victor ultimately settled with defendants and is not participating in this appeal. Victor and defendants executed a stipulation of dismissal with prejudice on July 14, 2023, terminating the litigation as to all parties. Accordingly, the July 14, 2023, order identified in the notice of appeal afforded the required finality for plaintiff to appeal from the September 14, 2022, order. See R. 2:2-3(a)(1).

577 (2013) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

Plaintiff, Victor,[2] and Maria are the children of decedent Modesto Miranda, who died testate on June 5, 2017. After Modesto's death, Maria initiated the probate process for Modesto's 2014 Last Will and Testament (LWT) in Bergen County Surrogate Court. On August 8, 2017, the LWT was admitted to probate and letters testamentary were issued to Maria. Upon learning that Modesto had disinherited them and named Maria as his sole beneficiary and executor of his will, plaintiff and Victor sought to contest the will and revoke the letters testamentary issued to Maria.

To that end, around August or September 2017, Victor retained defendants to provide legal representation on behalf of himself and plaintiff to set aside Modesto's will. As a result, defendants sent a retainer agreement dated September 13, 2017, addressed to Victor and plaintiff. In the agreement, defendant Rinaldi outlined the terms of the representation and asked Victor and plaintiff to "confirm the terms and conditions of [their] engagement of th[e] firm to represent [them] in relation to the [will contest] matter, prior to the initiation

_____

[2] Because of the common surname, we use first names to avoid confusion and intend no disrespect.

3

of services on [their] behalf." Only Victor signed and returned the retainer agreement to defendants. Plaintiff's signature line was crossed out and replaced with "N/A."

Nonetheless, in a September 14, 2017, letter, to the Morris County Surrogate, Rinaldi inquired as follows:

> Please be advised that this law firm represents Mr. Victor Miranda and Mr. John Miranda with regard to their deceased father, Modesto Miranda.
>
> In this regard, kindly advise if a Last Will and Testament has been probated on behalf of the decedent, Modesto Miranda, date of death of [June 2017] and if Letters Testamentary have been issued.
>
> Mr. Miranda's last known place of residency was . . . Parsippany Township, . . . Morris County, New Jersey.

Both Victor and plaintiff were copied on the letter.

After receiving no response, defendants contacted the Morris County Surrogate on or around December 11, 2017, and were advised that there was no will probated for Modesto in Morris County. Upon learning that Modesto had in fact resided with Maria in Bergen County prior to his death, on January 24, 2018, defendants filed a verified complaint in Bergen County on behalf of Victor, challenging the validity of Modesto's will. Plaintiff was not named as a plaintiff in the complaint, and an accompanying filing letter to the court

4

specified that defendants "represent[ed] Mr. Victor Miranda." On September 26, 2018, represented by John J. DeLaney, Jr., from Lindabury, McCormick, Estabrook & Cooper, PC (the Lindabury firm), plaintiff moved to intervene in the Bergen County probate action.

Ultimately, the complaint was dismissed as untimely under Rule 4:85-1 because it was not filed within four months of Modesto's will being probated. Victor appealed and we affirmed the trial judge's dismissal. See In re Modesto Miranda, No. A-1117-18 (App. Div. Sept. 25, 2019). Thereafter, on April 1, 2020, plaintiff and Victor filed the complaint against defendants that is the subject of this appeal, alleging legal malpractice stemming from defendants' failure to timely file the probate action. The complaint alleged that Victor had informed defendants that Modesto was a "Bergen County resident" prior to defendants' September 14, 2017, inquiry to the Morris County Surrogate.

During discovery, several witnesses were deposed, including plaintiff. Defendants maintained that plaintiff was never defendants' client, but was always represented by his lawyers from the Lindabury firm, Carlos Sanchez and DeLaney. Critically, during his deposition testimony, plaintiff confirmed that "after [his] father passed away," he retained Sanchez from the Lindabury firm who sent a letter on his behalf to Victor and Maria on August 2, 2017, stating

that plaintiff "ha[d] not received any notice of proceedings in the Bergen County Surrogate's [Court], nor . . . seen a copy of [Modesto's] will." In response, "Maria sent an e-mail to . . . Sanchez, giving him a copy of the notice of probate" for Modesto's will.

Further, plaintiff stressed that he was "represented by . . . Sanchez" at the time, that Sanchez "ha[d] been [his] lawyer for [twenty-three] years," and that he "would never have signed any [retainer] agreement with anyone other than . . . Sanchez." Plaintiff also testified that he "never went up to [defendants'] office" with Victor, "never entered into a retainer agreement with [defendants]," and was "never represented [by defendants] in the probate case."

Following discovery, defendants moved for partial summary judgment to dismiss plaintiff's claims. In opposition, plaintiff submitted a certification averring that "[f]or nearly two months" after his father's death, "no [w]ill was probated." As a result, he "consulted with [his] longtime attorney, Carlos Sanchez," who "prepared a caveat" for him to file with the Bergen County Surrogate. However, on August 7, 2017, when he went to file the caveat, he was told that "Maria [had] submitted [his] father's [w]ill for probate" "earlier that day." Upon receiving a copy of the will and discovering that his father "left nothing" to him or Victor, and "instead, left everything to Maria," plaintiff

6

"immediately told" Victor and "[a]t the same time, . . . showed the [w]ill to . . .

Sanchez and his partner, Mr. [DeLaney]" and "discussed their firm representing

[his] interests" in a will contest "based on undue influence by . . . Maria."

According to plaintiff's certification,

> Sanchez sent [him] a retainer agreement on August 18,
> 2017[,] specifically for his representation of [plaintiff]
> in the anticipated undue influence lawsuit.  [Plaintiff]
> did not sign th[e] fee agreement and . . . never retained
> . . . Sanchez to represent [him] in the undue influence
> lawsuit until the middle of 2018, after the lawsuit filed
> by . . . [d]efendants had been dismissed.

Plaintiff certified further that:

> Shortly after [he] received the proposed fee agreement
> on August 18, 2017, from . . . Sanchez's firm, Victor
> met with . . . Rinaldi sometime between August 28,
> 2017[,] and September 6, 2017 . . . .
>
> Victor told [him] that in his meeting with . . . Rinaldi,
> . . . Rinaldi told him that only one lawyer was needed
> to represent the interests of both [plaintiff] and Victor
> in an undue influence lawsuit.

Plaintiff continued that "[o]n September 6, 2017, [he] received another

email from . . . Sanchez indicating that he had . . . received a call from . . .

Rinaldi, who indicated that he, . . . Rinaldi, was representing [plaintiff] in the

undue influence lawsuit."[3]  According to plaintiff, shortly thereafter, he received

a copy of Rinaldi's September 13, 2017, retainer agreement signed by Victor as

well as a copy of Rinaldi's September 14, 2017, inquiry to the Morris County

Surrogate.  Plaintiff acknowledged the "'X' through [his] signature line and the

letters 'n/a'" appearing on the retainer agreement but asserted that he did not

make those notations, nor did he sign the retainer agreement.[4]

---

[3]  In the September 6, 2017, email, Sanchez stated:

> I received a call from [Rinaldi] . . . .  He tells me that
> Victor retained him and will include you in the will
> contest.  He said you and Victor were his co-clients.
> That said, I still think you should have your own
> counsel and participate in the filing of the papers (at a
> lower cost to you with [defendants] taking point), but
> giving yourself the option of taking a position different
> from your brother (I thought you said he was a hot head
> lo[o]se cannon?).  Even though your interests may be
> aligned now, in this kind of case, that changes, very
> quickly, and a lawyer representing multiple parties will
> be required to stop representing you both since he will
> be conflicted.  That[ is] bad for your case if it happens
> at a critical junction and will only serve to piss of[f]
> both of you.  Let me know if you want me to do
> anything more on this.

[4]  In a certification submitted in support of plaintiff's opposition to defendants'
motion for partial summary judgment, Victor averred that he signed the
September 13, 2017, retainer agreement, returned it to defendants, paid the legal
fees, and told plaintiff he "could pay [him] back."

A-3780-22

Plaintiff averred:

> Under the circumstances, that is, . . . Rinaldi telling . . . Sanchez he represents [plaintiff's] interest, . . . Rinaldi sending the surrogate letter with a copy to [plaintiff], and . . . Rinaldi including [plaintiff] in the Rinaldi [retainer agreement], and the statement by . . . Rinaldi to [Victor] that only one attorney was needed to represent both [their] interests, [plaintiff] came to the understanding that [his] interests were being represented by . . . [d]efendants.

On September 14, 2022, the motion judge entered an order granting defendants' motion for partial summary judgment and dismissing plaintiff's claims with prejudice. In an oral decision placed on the record on September 13, 2022, the judge posited that the dispositive issue, which was a question of law, was whether defendants owed a duty to plaintiff, a non-client. In that regard, citing the applicable legal principles, the judge explained that to establish such a duty, "either the lawyer or the lawyer's client [must] invite[] the non-client to rely on the lawyer's opinion or provision of legal services," the "non-client so relies," and "the non-client [must] not [be] . . . too remote from the lawyer to be entitled to protection."

The judge found that the remoteness element was "not really at issue" because there was "some evidence to suggest" that "at one point in time," plaintiff expected that Rinaldi "was going to represent him and his brother."

9

Focusing on the other two elements, representations and reliance, the judge explained:

> [T]here are some facts that would support the imposition of a duty here . . . . One is that [defendants] sent [plaintiff] a [September 13, 2017,] retainer agreement because they believed that the firm was going to represent both [plaintiff] and Victor in . . . the probate claim . . . .
>
> . . . .
>
> The next day[,] [defendants] wrote a letter to the Morris County Surrogate stating that [they] represented both [plaintiff] and Victor.
>
> And then thirdly, [defendant] Rinaldi called . . . Sanchez, who was at the time [plaintiff's] attorney, or had historically been his attorney. And I think at the time he was his attorney. And there was some representation apparently in that phone call that . . . [defendant] Rinaldi intended to represent both brothers.

However, the judge stressed that that was the "extent of" the facts supporting the imposition of a duty. The judge then examined the undisputed events that occurred after Modesto's will was probated, from August 2017 until early 2018. According to the judge, this was the "most important time period" because "there [was] correspondence going back and forth . . . between [plaintiff] and his counsel, . . . Sanchez," and "discussion . . . between [defendant] Rinaldi and . . . Sanchez." The judge reasoned that during this

critical time period, "[plaintiff] never spoke or met with . . . [defendant] Rinaldi," nor did plaintiff ever "respond[]" to defendants' September 13, 2017, retainer agreement, "which was addressed to both [plaintiff] and Victor." Additionally, the judge pointed out that even before defendants' retainer agreement was sent, plaintiff received "a September 6, 2017[,] email from . . . Sanchez . . . , recommending that his long-term client retain him instead of [defendants]."

The judge further hypothesized that if plaintiff and Victor were "operating under th[e] assumption" that defendants were representing both of them, "why [was] the complaint [not] drafted on behalf of both" and why did neither brother complain when it was not. The judge reasoned:

> [T]he conclusion to be drawn from the lack of any comment from either one of them in the early days of the lawsuit that was filed in 2018 is that they both understood that . . . Victor had retained [defendants] and [plaintiff] was going to be [represented] by . . . Sanchez and . . . the Lindabury firm.

Moreover, the judge highlighted that plaintiff was "not an unsophisticated individual" or "[an] inexperienced person who was[ not] familiar with . . . legal counsel." On the contrary, plaintiff "had . . . Sanchez as his lawyer for a long time," "was well[-]acquainted with attorneys," and "knew the importance of being represented by counsel."

A-3780-22

Finally, the judge related that in 2018, during the probate litigation, there were "lots of communications" between the parties, and "plenty of opportunit[ies] for [plaintiff]" to question whether defendants were representing him, but "[plaintiff] never d[id] that," which "reinforce[d]" the judge's conclusion that plaintiff did not rely on defendants' representation. Indeed, according to the judge, there was "zero evidence that [plaintiff] relied on [defendants] to draft a complaint on his behalf," or any evidence indicating that Victor "took steps to make sure that [defendants] represented both of their interests." The absence of evidence led the judge to conclude that plaintiff was not relying upon defendants to represent him. As such, "considering all the[] factors, and focusing . . . on fairness, foreseeability, the relationship between the parties, [and] public policy," the judge determined defendants did not owe plaintiff a duty and the absence of a duty was fatal to plaintiff's claim.

In this ensuing appeal, plaintiff raises the following arguments for our consideration:

> THE LOWER COURT IMPROPERLY ENGAGED IN FAC[T]FINDING IN GRANTING [DEFENDANTS'] MOTION FOR SUMMARY JUDGMENT AGAINST [PLAINTIFF].
>
> > A. The Lower Court Improperly Resolved Disputed Issues of Fact Concerning the Parties' Relationship.

B. A Genuine Issue of Material Fact Exists as to Whether [Defendants] Represented [Plaintiff].

C. The Court Gave Improper Weight to Events that Occurred After the Statute of Limitations Expired.

D. Evidence Demonstrates that [Defendants] Breached their Duty to [Plaintiff].

E. [Plaintiff] Presented Sufficient Evidence to Establish Proximate Causation.

## II.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. R. 4:46-2(c); see Brill[, 142 N.J. at 540]. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted. R. 4:46-2(c); see Brill, 142 N.J. at 540.

[Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016).]

Where there is no material fact in dispute, "we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). "We review issues of law de novo and accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

In determining whether the trial judge correctly interpreted the law, we begin by "identifying the elements of the cause of action and the standard of proof governing th[e] claim." Bhagat v. Bhagat, 217 N.J. 22, 39 (2014). "A legal malpractice claim is 'grounded in the tort of negligence,'" Nieves v. Off. of the Pub. Def., 241 N.J. 567, 579 (2020) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)), and "has three essential elements: '(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.'" Morris Props., Inc. v. Wheeler, 476 N.J. Super. 448, 459 (App. Div. 2023) (quoting Jerista v. Murray, 185 N.J. 175, 190-91 (2005)). A plaintiff must establish each element of a legal malpractice claim

A-3780-22

and "bears the burden of proving by a preponderance of competent credible evidence that injuries were suffered as a proximate consequence of the attorney's breach of duty." Sommers v. McKinney, 287 N.J. Super. 1, 9-10 (App. Div. 1996). "This burden is not satisfied by mere conjecture, surmise or suspicion." Id. at 10.

"The question of whether a duty exists is a matter of law to be decided by the court." Davin, L.L.C. v. Daham, 329 N.J. Super. 54, 73 (App. Div. 2000). Traditionally, the existence of an attorney-client relationship creating a duty is "essential to the assertion of a cause of action for legal malpractice." Froom v. Perel, 377 N.J. Super. 298, 310 (App. Div. 2005) (citing Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996)). Although courts have recognized a duty between an attorney and a non-client "in limited circumstances," Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 213 (App. Div. 2014), our Supreme Court has repeatedly emphasized that "the grounds on which any plaintiff may pursue a malpractice claim against an attorney with whom there was no attorney-client relationship are exceedingly narrow," Green v. Morgan Props., 215 N.J. 431, 458 (2013), and whether such a "duty extends to non-clients is 'necessarily fact-dependent,'" Est. of Albanese v. Lolio, 393 N.J. Super. 355, 368 (App. Div.

15

2007) (quoting Est. of <u>Fitzgerald v. Linnus</u>, 336 N.J. Super. 458, 473 (App. Div. 2001)).

As such, there are "relatively few situations" in which "a nonclient may file suit against another's attorney." <u>LoBiondo v. Schwartz</u>, 199 N.J. 62, 101 (2009). In <u>Petrillo v. Bachenberg</u>, 139 N.J. 472, 485 (1995), the Court recognized that "a lawyer's duty may run to third parties who foreseeably rely on the lawyer's opinion or other legal services." In that case, a real estate buyer was provided a misleading test report that was prepared by the seller's attorney and allegedly induced the buyer's purchase of the property. <u>Id.</u> at 474. In finding that the attorney had a duty to the buyer, the Court explained that "[t]he objective purpose of documents such as opinion letters, title reports, or offering statements, and the extent to which others foreseeably may rely on them, determines the scope of a lawyer's duty in preparing such documents." <u>Id.</u> at 485.

Applying that principle to the seller's attorney's report, the Court concluded that the attorney "should have foreseen that a prospective purchaser would rely on the . . . report in deciding whether to sign a contract and proceed with engineering and site work." <u>Id.</u> at 487. Furthermore, by providing the report and subsequently representing the seller in the sale, the attorney "assumed

16 <span style="float:right">A-3780-22</span>

a duty to [the buyer] to provide reliable information" and "[f]airness suggests that he should bear the risk of loss resulting from the delivery of a misleading report." Ibid. "Accordingly, attorneys may owe a duty of care to non-clients in situations in which the attorneys know or should know that the non-client would rely on the attorney's representations, and the non-client is not too remote from the attorney to be entitled to protection." Davin, L.L.C., 329 N.J. Super. at 74 (citing Petrillo, 139 N.J. at 483-84).

"[T]he rule announced in Petrillo has been applied rather sparingly, . . . [but] [i]t is not . . . the only basis on which [the Court] ha[s] recognized the potential for a direct claim against an attorney by a nonclient." Innes, 435 N.J. Super. at 213 (alterations and omissions in original) (quoting LoBiondo, 199 N.J. at 102). In Banco Popular N. Am. v. Gandi, 184 N.J. 161 (2005), an attorney was accused by the plaintiff bank of negligent misrepresentation, first by facilitating his client's asset transfer and second by "negotiating the terms of the . . . loan and guaranty and . . . issuing an opinion letter in connection therewith." Id. at 182-83. The Court noted that the bank's claims arising from the attorney's role in facilitating the transfer "exceed[ed] the reach of Petrillo in nearly every respect." Id. at 182. However, the Court held that the claims arising from the attorney's role in the negotiations could proceed. Id. at 186.

In differentiating the claims, the Court explained that "the duty recognized in Petrillo arose because an attorney, engaged in dealings involving a non-client, made misrepresentations to the non-client knowing that they would induce her reliance." Id. at 182. The Court explained that the Petrillo Court "never suggested, even obliquely," that a duty arose in circumstances "involving no representations, no reliance, and a remote third party with whom the attorney had no relationship." Ibid. According to the Banco Popular Court, although the bank could make no claims against the attorney for facilitating the asset transfer because the attorney made "no representations to the [b]ank seeking to induce reliance, [and] the entire transaction was intended to be, and in fact was, carried out without the [b]ank's knowledge," the attorney's role in negotiations, on the other hand, "st[ood] on [a] different footing" because "representations in negotiations are made to induce reliance." Id. at 182-83.

In appropriate circumstances, "we have held that attorneys may owe a limited duty in favor of specific non-clients." Davin, L.L.C., 329 N.J. Super. at 74. See id. at 74-75 (collecting cases). "In determining whether a duty exists, the court must identify, weigh and balance the following factors: the relationship of the parties; the nature of the attendant risk; the opportunity and ability to exercise care; and the public interest in the proposed solution." Davin,

L.L.C., 329 N.J. Super. at 73 (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)). "The determination of the existence of a duty ultimately is a question of fairness and policy." Ibid.

Here, we are satisfied there was no duty between defendants and plaintiff to sustain a cause of action for legal malpractice. Although defendants held themselves out as plaintiff's attorneys in the two September 2017 letters and in communicating with Sanchez, plaintiff's deposition testimony indisputably demonstrates that plaintiff did not rely on those communications and did not believe that defendants represented him. Plaintiff testified that he "would never have signed any [retainer] agreement with anyone other than . . . Sanchez," his "[o]ngoing" attorney for at least "[twenty-three] years." Plaintiff also testified that he "never went up to [defendants'] office" with Victor, "never entered into a retainer agreement with [defendants]," and was "never represented [by defendants] in the probate case."

Although plaintiff's certification contradicted his deposition testimony, it is undisputed that plaintiff never signed defendants' retainer agreement and was not named as a plaintiff in the complaint. As the judge pointed out, if plaintiff actually believed defendants were representing him, one would logically expect that plaintiff, an individual who "was well[-]acquainted with attorneys" and

19

"knew the importance of being represented by counsel," would have contacted defendants about the omission. Because there was no reliance by plaintiff, there was no duty imposed on defendants. See Petrillo, 139 N.J. at 483 (explaining "courts have imposed a duty on an attorney who prepares an instrument with the intent that third parties will rely on it").

On appeal, plaintiff argues "disputed issues of fact existed as to whether [defendants] invited [plaintiff] to rely on their opinion and whether [plaintiff] . . . did." Plaintiff asserts the judge "should have denied [defendants'] motion for summary judgment to allow a jury to weigh the evidence concerning the first and second elements" required to establish a duty of care for legal malpractice claims because the nature of the parties' relationship was in dispute. Plaintiff contends that by granting the motion, the judge improperly determined a question of fact.

Generally, "[t]he determination of the existence of a duty is a question of law for the court." Singer v. Beach Trading Co., 379 N.J. Super. 63, 74 (App. Div. 2005) (quoting Petrillo, 139 N.J. at 479). However, if there is conflicting evidence regarding an attorney-client relationship, the existence of the relationship is an issue of fact and summary judgment is improper. See Froom, 377 N.J. at 311-12 (holding existence of attorney-client relationship could not

20

be determined as a matter of law due to conflicting evidence as to the nature of the relationship).

Parties usually establish the relationship by express agreement, but a relationship can also be implied by the parties' conduct. In re Palmieri, 76 N.J. 51, 58-59 (1978) (recognizing that attorney's acceptance of the professional responsibility "need not necessarily be articulated, in writing or speech but may, under certain circumstances, be inferred from the conduct of the parties"); Herbert v. Haytaian, 292 N.J. Super. 426, 436 (App. Div. 1996) (finding that a relationship is created when the "prospective client requests the lawyer to undertake the representation, the lawyer agrees to do so and preliminary conversations are held between the attorney and client regarding the case").

Here, there is no dispute regarding the existence of an attorney-client relationship. Based on plaintiff's deposition testimony and conduct, there was neither an express nor an implied relationship. Although there was no attorney-client relationship, plaintiff could pursue a malpractice claim against defendants predicated on alternative grounds. However, plaintiff failed to satisfy the requisite elements to establish such a claim.

Plaintiff insists that disputed issues of fact exist to withstand summary judgment and the judge improperly weighed evidence against him. In opposing

summary judgment, plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts," Triffin v. Am. Int'l Grp., Inc., 372 N.J. Super. 517, 523-24 (App. Div. 2004) (quoting Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)), and must "do more than 'point[] to any fact in dispute' in order to defeat summary judgment," Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alteration in original) (quoting Brill, 142 N.J. at 529). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)). We are satisfied that there are no genuine issues of material facts in the record that would preclude summary judgment.

Based on our decision, we need not address plaintiff's remaining arguments, some of which are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-3780-22